UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFF SCHUMAN,<br>    Plaintiff,<br><br>    v.<br><br>AETNA LIFE INS. CO., et al.,<br>    Defendants. | No. 3:15-cv-01006 (SRU) |

## RULING ON MOTION FOR ATTORNEYS' FEES AND COSTS

Jeff Schuman filed suit against three defendants—Ahold USA's Master Welfare Benefit Plan, the Administrative Committee of Ahold USA as Plan Administrator, and Aetna Life Insurance Co. as Claims Administrator—alleging that they violated the Employee Retirement Income Security Act ("ERISA") by denying him long-term disability benefits. On March 20, 2017, I issued a ruling on the parties' cross-motions for summary judgment, in which I granted in part and denied in part the defendants' motion, and denied Schuman's motion in its entirety. In light of various inadequacies in the record, however, I ordered that the case be remanded to the claims administrator for a correct evaluation of Schuman's long-term disability claim.

Schuman now has moved for attorneys' fees and costs under ERISA § 502(g)(1), arguing that he is entitled to fees and costs because he successfully obtained a remand order. The defendants respond that Schuman is not entitled to fees because both parties requested remand in the alternative, and because I rejected the majority of Schuman's arguments on the merits. I conclude that Schuman has shown eligibility for fees and costs under ERISA, but that, in light of the equitable *Chambless* and *Johnson* factors, Schuman's fee award should be reduced from the amount sought. Therefore, I grant Schuman's motion in part and deny it in part.

## I. Standard of Review

Section 1132(g)(1) of ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has held that, under the language of the statute, "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Instead, a claimant need only "show 'some degree of success on the merits' before a court may award attorney's fees under [section] 1132(g)(1)." *Id.* at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). "[S]ome degree of success on the merits" demands more than "'trivial success on the merits' or a 'purely procedural victor[y].'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688 n.9). The court must be able to "fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688 n.9) (other internal quotation marks omitted).

"[W]hether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion," but the court *may* also look to the factors set forth in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir. 1987). *See Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014). Under *Chambless*, in determining whether to award attorneys' fees, the court may consider:

    (1) the degree of opposing parties' culpability or bad faith;

    (2) [the] ability of opposing parties to satisfy an award of attorneys' fees;

    (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Donachie*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting *Hardt*, 560 U.S. at 249 n.1; citing *Chambless*, 815 F.2d at 871 (same factors, but with order of fourth and fifth reversed)). Because "Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights," those provisions "must be liberally construed to protect the statutory purpose." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) (internal quotation marks omitted). In particular, "granting a prevailing plaintiff's request for fees is appropriate absent 'some particular justification for not doing so.'" *Donachie*, 745 F.3d at 47 (quoting *Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)).

## II. Background

The background of this case is set forth at length in *Schuman v. Aetna Life Insurance Co.*, 2017 WL 1053853, at *2–*9 (D. Conn. Mar. 20, 2017). Essentially, Schuman claimed that the defendants violated ERISA by failing to provide him with disability benefits to which he was entitled. On the parties' cross-motions for summary judgment, I determined that Schuman "raised several genuine issues regarding whether his claims determination was decided in a manner consistent with the claims-procedure regulations." *Id.* at *15. Those "violations," I held, were "sufficient under *Halo* [*v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016)] to trigger *de novo* review of the defendants' determination that Schuman" was not entitled to long-term disability benefits. *Id.* at *18. Because it remained "unclear from the Administrative Record whether either party presented sufficient evidence during the initial claim review and appeal process to determine whether Schuman me[t]" the plan's test for long-term disability, "remand [was]

3

appropriate to supplement the Administrative Record with information necessary to permit Aetna to make an appropriate evaluation of Schuman's [long-term disability] claim." *Id.* Accordingly, I ordered that Schuman's case be remanded to the claims administrator.

Both sides had moved in the alternative for remand, but on March 22, 2017, the Clerk entered judgment in favor of the defendants. Judgment, Doc. No. 83. Schuman moved to alter or amend the judgment on April 7, 2017, arguing that he had requested a remand and so judgment should enter in his favor. *See* Mot. Alter or Amend Judgment, Doc. No. 84, at 1. On April 21, 2017, I granted Schuman's motion in part and denied it in part, stating that, because "[b]oth [sides] moved in the alternative for remand, . . . judgment should not be entered 'in favor of' either party." Order, Doc. No. 86. I ordered the Clerk to "amend the judgment so that the reference to judgment entering in favor of the defendant is deleted, and the judgment simply directs remand to the claims administrator." *Id.* The Clerk filed the Amended Judgment in favor of neither side on April 25, 2017. Am. Judgment, Doc. No. 87.

On April 18, 2017, Schuman moved for attorneys' fees and costs in the amount of approximately $167,000.[1] Schuman argues that he has obtained "some degree of success on the merits"—as required to recover attorneys' fees under ERISA—by securing a remand and "demonstrating Aetna's numerous violations of the claims procedure regulation." *See* Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at 5 (other capitalization omitted). He also contends an award of attorneys' fees is favored under the Second Circuit's *Chambless* factors. *See id.* at 8. The defendants opposed Schuman's motion on May 9, 2017, asserting that Schuman "did not achieve any 'degree of success on the merits'" and that attorneys' fees should be denied or

---

[1] Schuman appears to have made a mathematical error in totaling his requested attorneys' fees and costs, but the sum of his requested fees and costs approximates $167,000.

4

"substantially reduced" under the *Chambless* factors. Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 1–2. Schuman replied to the defendants' opposition on May 22, 2017. *See* Reply Mem. Supp. Mot. Att'y Fees, Doc. No. 89.

**III.     Discussion**

Following the Supreme Court's decision in *Hardt*, "whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie*, 745 F.3d at 46. If I determine that Schuman has "obtained some degree of success on the merits," then I "may apply—but [am] not required to apply—the *Chambless* factors in 'channeling [my] discretion when awarding fees' under [section] 1132(g)(1). *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt*, 560 U.S. 255 & n.8). Although the *Chambless* factors are no longer mandatory, I consider it advisable to "deploy th[at] useful framework" in deciding whether to award Schuman fees. *Donachie*, 745 F.3d at 46; *see also, e.g.*, *Dwinell v. Fed. Express Long Term Disability Plan*, 2017 WL 1371254, at *2 (D. Conn. Apr. 14, 2017) (applying *Chambless* factors after holding that ERISA fee claimant had established "some success on the merits"); *Valentine v. Aetna Life Ins. Co.*, 2016 WL 4544036, at *5–*6 (E.D.N.Y. Aug. 31, 2016) (same); *but see Dimopoulou v. First Unum Life Ins. Co.*, 2017 WL 464430, at *2 (S.D.N.Y. Feb. 3, 2017) ("declin[ing] to consider the *Chambless* factors"); *Wallace v. Grp. Long Term Disability Plan*, 2015 WL 4750763, at *6 (S.D.N.Y. Aug. 11, 2015) (same). Therefore, I first will consider whether Schuman has "become eligible for a fees award" by obtaining "some degree of success on the merits." *See Hardt*, 560 U.S. at 255 & n.8. If Schuman has shown that he is eligible for a fee award, then I shall "consider the five factors" set forth in *Chambless* "in deciding whether to award attorney's fees." *Id.* at 255 n.8.

A. <u>Did Schuman achieve "some degree of success on the merits"?</u>

Schuman asserts that he "achieved some degree of success on the merits" by "obtaining a remand and demonstrating Aetna's numerous violations of the claims procedure regulation." Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at 5 (capitalization omitted). The defendants respond that Schuman hardly can characterize remand as "some degree of success on the merits" because they, too, requested remand as an alternative remedy. Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 3. The defendants recall that I ordered a remand because the long-term disability standard "had not been properly applied by *either* party during the administrative review process." Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 3. Moreover, they note that I ruled "against [Schuman] on virtually all of the issues he raised," and that some flaws I identified in the defendants' vocational analysis had the effect of being "perhaps over[ly] generous[]" to Schuman. *Id.* at 3. Thus, the defendants assert that I "decided neither side 'got it right,'" and that therefore Schuman's "'degree of success'—if at all—was . . . purely procedural." *Id.* at 4.

In *Hardt*, the Supreme Court expressly declined to decide "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees." *Hardt*, 560 U.S. at 256. "The Second Circuit has not answered th[at] question," either, *see Valentine*, 2016 WL 4544036, at *4, but most courts that have addressed the issue "have held that a remand to the plan administrator for review of a claimant's entitlement to benefits . . . is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1)." *See Gross v. Sun Life Assurance Co.*, 763 F.3d 73, 77–78 (1st Cir. 2014) (citing, e.g., *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546–47 (6th Cir. 2011); *Barnes v. AT&T Pension Benefit Plan–Nonbargained Program*, 963 F. Supp. 2d 950, 962–63 (N.D. Cal. 2013); *McCarthy v. Commerce Grp.*, 831 F. Supp. 2d 459, 463, 493 (D. Mass. 2011)); *see also, e.g.*, *Dwinell*, 2017 WL 1371254, at *2 ("[S]ome kinds of remands might be for highly

technical or clerical reasons," but a remand "essential to a full and fair consideration of plaintiff's claim . . . is sufficient to constitute 'some success on the merits.'"); *Dimopoulou*, 2017 WL 464430, at *1 ("Courts in the Second Circuit have awarded fees . . . in ERISA actions based solely on achieving a remand for further consideration by the administrative body.") (collecting cases); *Valentine*, 2016 WL 4544036, at *4 ("[M]any courts have concluded that remand . . . without more, constitutes success on the merits.") (collecting cases). Although those decisions do not bind me, I am persuaded by their reasoning as well as by the weight of judicial consensus.

The courts that have held "remand simpliciter is enough" have observed that "a remand for further administrative proceedings commonly results from a substantive review of the evidence." *Gross*, 763 F.3d at 78. In such circumstances, a remand order entails "two positive outcomes." *Id.* First, the court will have "f[ound] that the administrative assessment of the claim was in some way deficient." *Id.* Second, the plaintiff will have a "renewed opportunity to obtain benefits or compensation" on remand. *Id.* Both "positive outcomes" apply here. In ruling on the motions for summary judgment, I held that "the administrative assessment of [Schuman's] claim was . . . deficient," due in part to the defendants' numerous "[v]iolation[s] of the claims procedure regulation," at least one of which "could plausibly have changed the outcome of the appeal." *See id.*; *Schuman*, 2017 WL 1053853, at *15. Moreover, Schuman will have a "renewed opportunity to obtain benefits" on remand. *See Gross*, 763 F.3d at 78; *Schuman*, 2017 WL 1053853, at *18 (remanding so that the defendants can "make an appropriate evaluation of Schuman's [long-term disability] claim"). Therefore, Schuman has achieved at least the level of "*some success*, even if not major success," that many courts have held sufficient to establish eligibility for attorneys' fees under ERISA. *See Hardt*, 560 U.S. at 254.

The defendants suggest that because they too asked for remand, "[n]either side prevailed" and Schuman achieved only a "purely procedural victory." Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 4–5. Certainly, neither party sought remand as its preferred remedy, and Schuman has not "prevailed" by obtaining an outright award of benefits. *See id.* But under *Hardt*, "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under [section] 1132(g)(1)." *Hardt*, 560 U.S. at 252. By securing a remand after the defendants denied him benefits, Schuman achieved a result that was more favorable to him—and less favorable to the defendants—than the status quo. In my view, that "partial[]" degree of success on the merits is enough to render Schuman eligible for attorneys' fees under ERISA. *See id.* at 254 (emphasis removed). Although the defendants' argument remains pertinent to the "relative merits of the parties' positions" under *Chambless*, *see* 815 F.2d at 871, with respect to the antecedent inquiry of Schuman's eligibility for attorneys' fees, I cannot conclude that—merely because Schuman did not obtain the relief he preferred—he did not obtain any significant relief at all.

In short, Schuman "achieved 'some success on the merits'" and therefore is "eligible for a fees award" under ERISA. *See Hardt*, 560 U.S. at 255–56 & n.8. But I am not required to award Schuman fees merely because he is "eligible." Rather, ERISA provides that "the court in its discretion *may* allow a reasonable attorney's fee and costs of action." 29 U.S.C. § 1132(g)(1) (emphasis added). Accordingly, I "retain discretion to consider [ ] five [additional] factors," set forth in *Chambless*, "in deciding whether to award attorney's fees." *Donachie*, 745 F.3d at 46 (internal quotation marks omitted). I now proceed to address the *Chambless* factors.

B. Do the *Chambless* factors favor an award of attorneys' fees?

Should a court "choose[] to consider factors other than a plaintiff's 'success on the merits' in assessing a request for attorneys' fees," the five *Chambless* factors "provide[] the

relevant framework." *Donachie*, 745 F.3d at 46. No single factor is "dispositive," but the first factor—"the degree of opposing parties' culpability or bad faith"—and the fifth factor—"the relative merits of the parties' positions"—"weigh heavily." *Id.* at 46–47 (quoting *Hardt*, 560 U.S. at 249 n.1; *Slupinski*, 554 F.3d at 48). When a plaintiff has "prevail[ed]" on the merits, "granting a . . . request for fees is appropriate absent 'some particular justification for not doing so.'" *Id.* (quoting *Birmingham*, 718 F.2d at 523). Here, I agree with the defendants that—in light of both parties' request for remand in the alternative and my rejection of most of Schuman's claims—Schuman cannot be said to have "prevail[ed]" in the litigation. *See id.*; Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 4–5. Therefore, I need not set forth a "particular justification" for denying fees, but I remain obligated to adequately "articulate reasons for [my] decision." *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 137 (2d Cir. 2001).

1. *Were the defendants "culpabl[e]," or did they act in "bad faith"?*

In their memoranda, both Schuman and the defendants concentrate on whether the defendants acted in "bad faith," as opposed to whether they were "culpabl[e]." *See* Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at 9–10; Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 7–8. But "the concepts of 'bad faith' and 'culpability' are distinct, and either one may satisfy the first *Chambless* factor." *Donachie*, 745 F.3d at 47. "[C]ulpable conduct" means "conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault.'" *Slupinski*, 554 F.3d at 48 (quoting *Black's Law Dictionary* (6th ed. 1990)). For example, the Second Circuit has held that a plan administrator "may properly be found culpable if it 'failed to engage in a fair and open-minded consideration of [a] claim,'" regardless of whether it "act[ed] in bad faith." *Id.* (quoting *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 451 (2d Cir. 2006)). The Second Circuit also has "suggest[ed] that any defendant found to have 'violated ERISA, thereby depriving plaintiffs of rights under a[] [benefit] plan and violating a

9

Congressional mandate[,]' is 'culpable' within the meaning of the first *Chambless* factor." *Id.* (quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)).

I previously touched on the issue of culpability in my ruling on the parties' cross-motions for summary judgment. There, as here, Schuman contended that the defendants had acted in bad faith. In response to Schuman's assertion that "bad faith [was] shown by the [Administrative] Committee's persistent inability to provide Schuman with [] applicable plan documents," I observed that "incompetence, rather than bad faith or intentional conduct, drove . . . the Committee's inability" to comply with the regulation. *Schuman*, 2017 WL 1053853, at *21. I described other aspects of the defendants' conduct as "concerning," "improper," and "unreasonable," and noted that at least one of the defendants' regulatory violations "c[ould] []not be written off as harmless because a consideration of th[e] documents could plausibly have changed the outcome of the appeal." *See id.* at *15, *16, & *21. In consequence, the defendants are "'culpable' within the meaning of the first *Chambless* factor," and so that factor supports a fee award. *Slupinski*, 554 F.3d at 48.

   2. *Can the defendants "satisfy an award" of attorneys' fees?*

The parties do not dispute that the defendants can satisfy an award of attorneys' fees. The second factor also supports a fee award.

   3. *Would an award of attorneys' fees against the defendants "deter other persons acting under similar circumstances"?*

The defendants assert that deterrence is not necessary because they did not "violate[] [their] fiduciary duties," and characterize my holding as merely that the defendants "did not comply with several . . . technical regulations." Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 8. To be sure, Schuman overstates the circumstances by asserting that I "found that [the defendants] engaged in actions that were violations of its fiduciary duties and the 'full and fair review'

requirements of ERISA." Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at 11. Nevertheless, as the Second Circuit has cautioned, "deviations in the processing of a particular claim . . . should not be tolerated lightly." *Halo*, 819 F.3d at 57. In ruling on the cross-motions for summary judgment, I identified several "serious plausible procedural violation[s]" that may have been committed by the defendants, "at least one of [which] . . . could plausibly have changed the outcome of the appeal." *Schuman*, 2017 WL 1053853, at *15–*16. Although I believed those violations to be caused by "incompetence" rather than bad faith or malign intent, *id.* at *21, an award of attorneys' fees likely would incentivize the defendants to improve their procedures to avoid violating the regulation in the future. *Cf. Valentine*, 2016 WL 4544036, at *6 ("[A]warding attorney's fees where the administrator has failed to consider important medical information can serve to deter administrators from engaging in such arbitrary and capricious behavior in the future."). Hence, I conclude that the third *Chambless* factor also supports a fee award.

   4. *Did Schuman "s[eek] to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA"?*

Schuman appears to concede that he cannot "point[] to any common benefit beyond the deterrent effect that is taken into account in the third *Chambless* factor." Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at 11 (quoting *Slupinski*, 554 F.3d at 48). He correctly states, however, that a "common benefit" is not essential under *Chambless*, and that "failure to satisfy [that] factor does not preclude an award of attorneys' fees." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004). Thus, the fourth factor does not support a fee award, but carries comparatively less weight in the analysis.

   5. *Do the "relative merits of the parties' positions" favor an award of attorneys' fees?*

The defendants forcefully argue that the "relative merits of the parties' positions" do not support a fee award, because Schuman's success in obtaining a remand "is overshadowed by his

failure to establish his other claims" and to prevail on "most of his arguments" before the court. Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 10. As the defendants note, Schuman "failed to establish his claim for equitable relief"; "did not prove" that he was entitled to "another full year of benefits" under the "own occupation" provision[2]; "failed to establish [his] claim for statutory penalties"; and did not prove "that there was no grant of discretionary authority to [the defendants]." *Id.* I also rejected a number of Schuman's other arguments in support of his claims as "easily contradicted" and "unconvincing." *See Schuman*, 2017 WL 1053853, at 11 n.9 & 13 n.10. In sum, I ruled against Schuman on the vast majority of contested issues, and ordered a remand because "[*n*]*either party*"—Schuman included—had "presented sufficient evidence during the initial claim review and appeal process." *Id.* at *18 (emphasis added).

Schuman "achieved 'some success on the merits,'" as I noted above, but the defendants achieved "some success," as well. *See Hardt*, 560 U.S. at 256. Judgment ultimately entered in favor of neither party, *see* Am. Judgment, Doc. No. 87, at 1, which suggests that the merits of the parties' positions were, at best, in equipoise. Moreover, in several other respects, the record shows that the "relative merits" favored the defendants. Whereas I denied Schuman's cross-motion for summary judgment in its entirety, I granted the defendants' motion for summary judgment in part with respect to Schuman's equitable claims and motion for civil penalties. *See Schuman*, 2017 WL 1053853, at *21. And even though my remand order represents a defeat for the defendants relative to the status quo—for Schuman will have another opportunity to make

---

[2] Schuman's policy initially provided for a period of long-term disability benefits if the claimant could not "perform the material duties of [his] own occupation." *See Schuman v. Aetna Life Ins. Co.*, 2017 WL 1053853, at *2 (D. Conn. Mar. 20, 2017). After that period—which Schuman contended lasted for 24 months, and which I held lasted for 12 months—the claimant was required to satisfy a more demanding "reasonable occupation" test. *See id.*

out a claim for benefits—Schuman himself was partially responsible for the inadequate evidentiary record that made remand necessary. *See id.* at *18.

Unlike the Equal Access to Justice Act (EAJA), which Schuman identifies as "analogous," Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at *8, ERISA provides that the court "may allow a reasonable attorney's fee and costs of action to *either party*." 29 U.S.C. § 1132(g)(1) (emphasis added); *cf.* 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a *prevailing party* . . . fees and other expenses . . . ."). Thus, under ERISA, the court appropriately may consider "the relative merits of the parties' positions" in deciding whether to award attorneys' fees. *See Chambless*, 815 F.2d at 872. Here, for the reasons stated, I conclude that "relative merits of the parties' positions" favor the defendants. *See id.* at 872. Hence, the fifth *Chambless* factor—which "weigh[s] heavily" in the analysis—does not favor a fee award. *See Donachie*, 745 F.3d at 47.

C. Should the amount of attorneys' fees be reduced from what Schuman requests?

Schuman is eligible for attorneys' fees because he has "achieved 'some degree of success on the merits,'" *Toussaint*, 648 F.3d at 110, and the first three *Chambless* factors favor allowing a fee award. But the last two *Chambless* factors—one of which "weigh[s] heavily," *see Donachie*, 745 F.3d at 47—do not favor an award. Recalling that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights," *Locher*, 389 F.3d at 298, I conclude that Schuman should be permitted to recover attorneys' fees, but in a smaller amount than he has claimed.

The "lodestar" amount for attorneys' fees—what the Second Circuit has called the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) ("*Arbor Hill*")—"is the product of reasonable hours

out a claim for benefits—Schuman himself was partially responsible for the inadequate evidentiary record that made remand necessary. *See id.* at *18.

Unlike the Equal Access to Justice Act (EAJA), which Schuman identifies as "analogous," Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at *8, ERISA provides that the court "may allow a reasonable attorney's fee and costs of action to *either party*." 29 U.S.C. § 1132(g)(1) (emphasis added); *cf.* 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a *prevailing party* . . . fees and other expenses . . . ."). Thus, under ERISA, the court appropriately may consider "the relative merits of the parties' positions" in deciding whether to award attorneys' fees. *See Chambless*, 815 F.2d at 872. Here, for the reasons stated, I conclude that "relative merits of the parties' positions" favor the defendants. *See id.* at 872. Hence, the fifth *Chambless* factor—which "weigh[s] heavily" in the analysis—does not favor a fee award. *See Donachie*, 745 F.3d at 47.

C. Should the amount of attorneys' fees be reduced from what Schuman requests?

Schuman is eligible for attorneys' fees because he has "achieved 'some degree of success on the merits,'" *Toussaint*, 648 F.3d at 110, and the first three *Chambless* factors favor allowing a fee award. But the last two *Chambless* factors—one of which "weigh[s] heavily," *see Donachie*, 745 F.3d at 47—do not favor an award. Recalling that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights," *Locher*, 389 F.3d at 298, I conclude that Schuman should be permitted to recover attorneys' fees, but in a smaller amount than he has claimed.

The "lodestar" amount for attorneys' fees—what the Second Circuit has called the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) ("*Arbor Hill*")—"is the product of reasonable hours

out a claim for benefits—Schuman himself was partially responsible for the inadequate evidentiary record that made remand necessary. *See id.* at *18.

Unlike the Equal Access to Justice Act (EAJA), which Schuman identifies as "analogous," Mem. Supp. Mot. Att'y Fees, Doc. No. 85-6, at *8, ERISA provides that the court "may allow a reasonable attorney's fee and costs of action to *either party*." 29 U.S.C. § 1132(g)(1) (emphasis added); *cf.* 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a *prevailing party* . . . fees and other expenses . . . ."). Thus, under ERISA, the court appropriately may consider "the relative merits of the parties' positions" in deciding whether to award attorneys' fees. *See Chambless*, 815 F.2d at 872. Here, for the reasons stated, I conclude that "relative merits of the parties' positions" favor the defendants. *See id.* at 872. Hence, the fifth *Chambless* factor—which "weigh[s] heavily" in the analysis—does not favor a fee award. *See Donachie*, 745 F.3d at 47.

C. Should the amount of attorneys' fees be reduced from what Schuman requests?

Schuman is eligible for attorneys' fees because he has "achieved 'some degree of success on the merits,'" *Toussaint*, 648 F.3d at 110, and the first three *Chambless* factors favor allowing a fee award. But the last two *Chambless* factors—one of which "weigh[s] heavily," *see Donachie*, 745 F.3d at 47—do not favor an award. Recalling that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights," *Locher*, 389 F.3d at 298, I conclude that Schuman should be permitted to recover attorneys' fees, but in a smaller amount than he has claimed.

The "lodestar" amount for attorneys' fees—what the Second Circuit has called the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) ("*Arbor Hill*")—"is the product of reasonable hours

times a reasonable rate." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992). In calculating an award, I first determine the "reasonable hourly rate," that is, "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. Then, I multiply that rate by "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[I]n exercising [my] considerable discretion," *Arbor Hill*, 522 F.3d at 190, I may increase or reduce the amount of the award in accordance with equitable considerations such as the nine factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions;
>
> (3) the level of skill required to perform the legal service properly;
>
> (4) the preclusion of employment by the attorney due to acceptance of the case;
>
> (5) the attorney's customary hourly rate;
>
> (6) whether the fee is fixed or contingent;
>
> (7) the time limitations imposed by the client or the circumstances;
>
> (8) the amount involved in the case and the results obtained;
>
> (9) the experience, reputation, and ability of the attorneys;
>
> (10) the 'undesirability' of the case;
>
> (11) the nature and length of the professional relationship with the client; and
>
> (12) awards in similar cases

*Arbor Hill*, 522 F.3d at 186 n.3. The court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

The party that moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). Therefore, when

14

claiming fees and expenses, the movant must provide "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The court may deduct "[h]ours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434). Moreover, the movant also "has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits"—that the requested rates are those "prevailing . . . for comparable attorneys of comparable skill and standing in the pertinent legal community." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005) (quoting *Blum*, 465 U.S. at 896 n.11); *Kirsch*, 148 F.3d at 172. The pertinent community typically is "the forum of the litigation" (even if that is not where the non-party's "counsel has its primary office"), unless the movant shows that "a reasonable, paying client would have retained out-of-district counsel." *Arbor Hill*, 522 F.3d at 184 n.2; *Smart SMR of N.Y. v. Zoning Comm'n*, 9 F. Supp. 2d 143, 149 (D. Conn. 1998).

    1. *Reasonable rate*

"[A] reasonably hourly rate is the 'prevailing market rate,'" that is, "the rate 'prevailing . . . for similar services by lawyers of reasonably comparable skill, experience, and reputation' . . . [in] the district in which the court sits." *Farbotko*, 433 F.3d at 208 (quoting *Blum*, 465 U.S. at 896 n.11). Connecticut district courts typically "consider the billing rates of the District of Connecticut," even if counsel has its primary offices elsewhere. *See Smart SMR of N.Y.*, 9 F. Supp. 2d at 149. Nevertheless, the district court may award "out-of-district fees" to attorneys from outside Connecticut "if a reasonable, paying client would have retained out-of-district counsel." *See Arbor Hill*, 522 F.3d at 186. As with other aspects of a motion for fees, "the fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." *Farbotko*, 433 F.3d at 209 (quoting *Blum*, 465 U.S. at 896 n.11).

15

Schuman was represented in this litigation by Winona W. Zimberlin and Russell D. Zimberlin of Zimberlin Law LLC. Winona Zimberlin seeks a rate of $400 per hour; Russell Zimberlin seeks $250 per hour. Schuman's attorneys support the reasonableness of their fees with their own affidavits and with an affidavit by David S. Rintoul, an ERISA litigator with 25 years of experience, who states that he "routinely charge[s] clients $425 an hour for ERISA cases" and that "[b]ased on [his] familiarity with other attorneys who practice in this area of the law in the State of Connecticut," the rates charged by Schuman's attorneys are "the prevailing market rate[s], or lower than the prevailing market rate[s], for services by attorneys with reasonably comparable skill, experience and reputation." *See* Rintoul Aff., Doc. No. 85-3, at 1–2.

The defendants respond by citing several recent ERISA cases in which the prevailing hourly rates in this district were found to be below the rates claimed by Schuman's attorneys. *See* Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 12 (citing, e.g., *Dwinell*, 2017 WL 1371254, at *2 (holding that $375 per hour for a partner was reasonable); *Trs. of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec.*, 2015 WL 3581011, at *5 (D. Conn. June 5, 2015) (holding that $250 per hour for a partner was reasonable)). In a 2007 ERISA case, *Mikrut v. Unum Life Insurance Co. of America*, I held that a reasonably hourly rate in this district for a partner was $350 per hour, and that a reasonable hourly rate for a mid-level associate was $220 per hour. *See* 2007 WL 2874801, at *4. The attorneys in that case—unlike in the present one—had a "national, . . . big-city" practice that allowed them to charge higher rates. *See id.* at *2 (emphasis removed). Although nearly a decade has passed since my decision in *Mikrut*, the rates calculated by judges in more recent cases and the local nature of the Zimberlins' practice lead me to conclude that an hourly rate of $375 per hour is reasonable for Winona Zimberlin in the present case.

With regard to Russell Zimberlin, the defendants fairly point out that "he was admitted to practice in Connecticut state court in December 2015, after this action had been pending for several months." Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 12–13. In other words, Russell Zimberlin effectively practiced in the present case as a first- and second-year associate. Based on my knowledge of the rates prevailing in this district, I agree that $250 per hour is excessive for such a junior associate, and hold that a reduction to $200 per hour is appropriate.

2. *Reasonable hours*

In accordance with my power to deduct "[h]ours that are 'excessive, redundant, or otherwise unnecessary'" from an award of attorneys' fees, *Kirsch*, 148 F.3d at 173 (quoting *Hensley*, 461 U.S. at 434), as well as my authority to consider "the relative merits of the parties' positions" under ERISA, *see Chambless*, 815 F.2d at 872, I will award Schuman fees only for hours spent on the single claim for benefits on which he was partially successful. As the defendants note, however, Schuman's attorneys' schedule of tasks and hours "does not itemize work done on clams that [I] dismissed outright or the many arguments of fact and law that [I] rejected." *See* Mem. Opp'n Mot. Att'y Fees, Doc. No. 88, at 10. Furthermore, Schuman's attorneys' records largely do not permit me "to isolate work done for the substantive claims and arguments . . . which [I] rejected," or to "relate . . . telephone calls, conferences, correspondence and the like, to any particular claim or theory." *Id.* at 11. Schuman bears the burden of showing that the requested costs and fees are reasonable. *See Blum*, 465 U.S. at 897. Therefore, I will permit Schuman to recover attorneys' fees only for hours that clearly were "necessary" to the prosecution of his successful claim. *See Arbor Hill*, 522 F.3d at 184.

Many of the hours billed by Schuman's attorneys clearly were spent on unsuccessful claims. *See, e.g.*, Billing Records, Doc. No. 85-4, at 1 (Oct. 19, 2015) (0.90 hours for "Research – Amara – Equitable claims"); *id.* at 2 (May 23, 2016) (0.80 hours for "Research re: Estoppel

17

claim"); *id.* (June 14, 2016) (0.75 hours for "Research re: Estoppel," 1.25 hours for "Research re: Reformation"); *id.* at 10 (May 13, 2015) (2.40 hours for "Research recent case law re: equitable remedies; applicability to Schuman's case"); *id.* at 31 (May 23, 2016) (0.60 hours for "Draft Memorandum of Law re: Amara, estoppel, effect on this case"); *id.* at 35 (June 11, 2016) (0.50 hours for "Gore v. el Paso, 12 v. 24 month provision; equitable remedies; subsequent law," and 0.70 hours for "Memorandum in Opposition; Gore case, equitable remedies (part)"); *id.* (June 14, 2016) (2.30 hours for "Draft re: conflict of interest as affecting defendant Aetna," 0.40 hours for "Draft re: estoppel as a remedy," 0.70 hours for "Research re: contract reformation," and 0.40 hours for "Research re: estoppel case law"); *id.* (June 15, 2016) (0.50 hours for "Draft re: promissory estoppel," 1.30 hours for "Draft re: reformation"); *id.* at 39 (July 9, 2016) (2.30 hours for "Case law re: civil penalties," 2.20 hours for "Draft re: request for civil penalty," and 0.30 hours for "Research ERISA statute and regulations re: penalties"); *id.* (July 11, 2016) (0.30 hours for "Draft Motion for Civil Penalties," 2.60 hours for "Draft memorandum in support of motion for civil penalties," and 0.60 for "Research re: civil penalties"); *id.* at 41 (Aug. 8, 2016) (2.80 hours for "Draft re: civil penalties . . . ."). Other entries—such as time billed for motions to expand the record and on oral argument—do not distinguish time spent on successful claims from time spent on unsuccessful ones. Because those vague and overbroad time entries do not carry Schuman's burden to demonstrate that the hours were "necessary," *see Blum*, 465 U.S. at 897; *Arbor Hill*, 522 F.3d at 184. I will apply an across-the-board reduction to the claimed hours to account for Schuman's "partial victory." *See MacLeod v. Procter & Gamble Disability Ben. Plan*, 2007 WL 141956, at *4 (D. Conn. Jan. 18, 2007).

At the hearing on the cross-motions for summary judgment, Schuman asserted claims for (1) benefits under 29 U.S.C. § 1132(a)(1)(B), on a theory either that (a) a longer "own

occupation" period applied, or (b) the "reasonable occupation" test was not applied correctly; (2) equitable relief due to Schuman's reliance on the longer "own occupation" period; and (3) civil penalties under 29 U.S.C. § 1132(c). *See Schuman*, 2017 WL 1053853, at \*9. Schuman was (partially) successful only on his claim for benefits under the "reasonable occupation" theory. I conclude that Aetna's proposed 75 percent reduction in hours adequately—even generously—captures the proportion of work that Schuman's attorneys spent on his successful claim. Thus, I will permit Schuman's attorneys to recover fees for only one-quarter of their claimed hours.

    3. *Presumptively reasonable fee*

Winona Zimberlin claims 386.13 hours. Reducing her hours by 75 percent, I will allow her to recover fees for 96.5 hours. Multiplied by Winona Zimberlin's reasonable hourly rate of $375, the total fee award for Winona Zimberlin will be $36,187.50.

Russell Zimberlin claims 48.8 hours. Reducing his hours by 75 percent, I will allow him to recover for 12.2 hours. Multiplied by Russell Zimberlin's reasonable hourly rate of $200, the total fee award for Russell Zimberlin will be $2,440.

Adding the fee awards for Schuman's two attorneys, I hold that the Schuman is entitled to attorneys' fees in the amount of $38,627.50 from the defendants, jointly and severally.

  D.  <u>Should Schuman be awarded costs?</u>

Schuman also claims $450.10 in costs (consisting of the filing fee and mailing charges for waiver of service of process forms). Under section 1132(g)(1) of ERISA, "in [my] discretion [I] may allow . . . costs of action to either party." 29 U.S.C. § 1132(g)(1). Conversely, under Local Civil Rule 54(a)(2), only "the prevailing party" is entitled to costs, and "[n]o costs shall be allowed . . . if the [c]ourt is unable to identify the prevailing party." Local R. Civ. P. 54(a)(2).

I am permitted to award costs under ERISA because Schuman has achieved "some degree of success on the merits," *Hardt*, 560 U.S. at 255, and the defendants have not opposed Schuman's request. Nevertheless, I exercise my discretion—consistent with the Local Rule—to deny costs because Schuman is not a "prevailing party." *See* Local R. Civ. P. 54(a)(2). The attorneys' fees award sufficiently compensates Schuman for his limited success on the merits.

## IV. Conclusion

Schuman's motion for attorneys' fees is granted up to the amount of $38,627.50, and otherwise denied. Schuman's motion for costs is denied.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of June 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge