# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFF SCHUMAN,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>AETNA LIFE INS. CO., et al.,<br>　　　　Defendants. | No. 3:15-cv-01006 (SRU) |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

On July 1, 2015, Jeff Schuman filed this action against three defendants—Ahold USA's Master Welfare Benefit Plan, the Administrative Committee of Ahold USA as Plan Administrator, and Aetna Life Insurance Co. ("Aetna") as Claims Administrator—alleging that they violated the Employee Retirement Income Security Act ("ERISA") by denying him long-term disability benefits. *See* Compl., Doc. No. 1; Am. Compl., Doc. No. 32-1. On March 20, 2017, I issued a ruling on the parties' cross-motions for summary judgment (doc. nos. 36 and 37), in which I granted in part and denied in part the defendants' motion and denied Schuman's motion in its entirety. *See Schuman v. Aetna Life Ins. Co.*, 2017 WL 1053853, at *1 (D. Conn. Mar. 20, 2017) (hereinafter "*Schuman I*"). In light of various inadequacies in the record, however, I ordered that the case be remanded to the claims administrator for a correct evaluation of Schuman's long-term disability claim. *Id*. at *12. Specifically, I directed the defendants to complete another vocational evaluation that would determine "whether Schuman is or may become fitted to perform any type of work that actually exists in the economy and whether he is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it." *Id.* at *18 (internal quotations omitted).

Aetna denied Schuman's renewed disability claim on August 4, 2017. *See* Supplemental Administrative Record ("SAR") at 1668. Schuman appealed that decision September 1, 2017. *Id*. at 1675. On October 31, 2017, I granted Schuman's motion to reopen the case (doc. no. 102) and noted that the case was "remanded to permit Aetna to complete the administrative appeal process. Aetna shall decide the administrative appeal within fourteen days of the date of this order. Failure to issue a decision within that deadline will be treated as a denial of the appeal." Doc. No. 104. Aetna upheld its denial decision on appeal in a letter dated November 10, 2017. SAR at 1754. On April 23, 2018 the parties again filed cross-motions for summary judgment (doc. nos. 113 and 115).

After a review of the record and supplemental briefing, I **deny** both motions.

**I.   Standard of Review**

  A.  Summary Judgment

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the

nonmoving party"). In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the court must construe the evidence in the light most favorable to the non-moving party. *Id.*

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of

nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

B. ERISA

"When an ERISA plan participant challenges a denial of benefits, the proper standard of review is *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority' to assess a participant's eligibility." *Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 658 (2d Cir. 2013), *abrogated on other grounds by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the plan does reserve discretion, the denial is subject to arbitrary and capricious review and will be overturned only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (internal quotation marks and citation omitted). The Second Circuit held in *Halo v. Yale Health Plan*, however, that the denial of a claim under a plan including discretionary authority is *not* entitled to the great deference afforded by the arbitrary and capricious standard if the denial procedure failed to comply with the Department of Labor's claims-procedure regulation, 819 F.3d 42, 56 (2d Cir. 2016). The *Halo* Court further stated that "the plan bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." *Id.* (internal quotation marks and citation omitted).

I previously held that Schuman's plan granted Aetna discretionary authority, subject to arbitrary and capricious review. *See Schuman I* at *14. Despite the plan's adequate grant of discretion, Schuman identified several potential violations of the claims-procedure regulations that would trigger *Halo's de novo* review. Those violations included Aetna failing to consider the vocational report of Erin Bailey when making its appeal determination, failing to identify Joseph Thompson as a vocational expert, and failing to provide Schuman with its internal

4

guidelines. *Id*. at *15–18.[1] Thus, I determined that Schuman presented sufficient evidence to invoke *de novo* review of his claim. *Id.*

## II.    Background

The background of this case prior to remand is set forth at length in *Schuman I*, at *2–*9.[2] In brief summary, Jeff Schuman worked as a retail pharmacist for thirty-five years before he became disabled with a foot injury on or around June 16, 2011. At the time, he was employed by Ahold USA, Inc. as a retail pharmacy manager at a Stop & Shop Supermarket. Schuman filed a short-term disability ("STD") claim while he underwent surgery to address pain in his right foot. He returned to work on January 30, 2012 but continued to have foot pain. Schuman's treating physician determined that he was only capable of sedentary work. On August 29, 2013, Schuman informed an Aetna representative that he would not be able to return to his position. Schuman's disability continues to render him incapable of holding that position until the present.

In September 2013, Schuman's claim was referred for a determination whether he was eligible for long-term disability ("LTD") benefits. On October 23, 2014, Aetna denied Schuman's LTD claim because he did not meet the "reasonable occupation" test as defined in Aetna and Ahold's disability plan.[3] Schuman appealed Aetna's denial on November 14, 2014,

---

[1] Schuman contends that Aetna violated: 29 C.F.R. § 2560.503-1(h)(3)(iv) by failing to consider all documents on appeal; 29 C.F.R. § 2560.503-1(h)(3)(ii) by giving improper deference to the initial determination; 29 C.F.R. §§ 2560.503-1(h)(2)(iii) and (m)(8)(iv) by failing to furnish internal guidelines; 29 C.F.R. § 2560.503-1(b)(5) by failing to set up administrative processes; and 29 C.F.R. § 2560.503-1(h)(3)(iv) by failing to identify experts. *Id.*

[2] Unless otherwise indicated, the following facts are drawn from statements in the parties' Local Rule 56(a)(1) Statements to which the other side did not object. *See* Defs.' L.R. 56(a)(1) Stmts. (docs. 36-6 and 115-1); Pl.'s L.R. 56(a)(1) Stmts. (docs. 37-2 and 113-2).

[3] Schuman was eligible to participate in a long- and short-term disability plan provided as part of a group insurance plan between Aetna and Ahold. All of the potential policies provide for six months of STD. All versions of the policy then provided an initial period in which LTD benefits would be paid if the claimant met the "own occupation" test. At the end of the period in which the "own occupation" test applied, LTD benefits would be paid for an additional period if the claimant met the "reasonable occupation" test, meaning he could not perform the material duties of any reasonable occupation "solely because of" his disability. *See* Administrative Record ("AR") at 9, 102.

but his appeal was denied on January 16, 2015. Schuman appealed for a second time on January 21, 2015, but Aetna decided not to reopen the appeal on June 24, 2015.

On July 1, 2015, Schuman filed his current suit. On March 20, 2017, I granted in part and denied in part the defendants' motion and denied Schuman's motion in its entirety. *See Schuman I*, at *21. I determined that Schuman "raised several genuine issues regarding whether his claims determination was decided in a manner consistent with the claims-procedure regulations." *Id.* at *15. Those "violations," I held, were "sufficient under *Halo* [*v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016)] to trigger *de novo* review of the defendants' determination that Schuman" was not entitled to long-term disability benefits. *Id.* at *18. Because it remained "unclear from the Administrative Record whether either party presented sufficient evidence during the initial claim review and appeal process to determine whether Schuman me[t]" the plan's test for long-term disability, "remand [was] appropriate to supplement the Administrative Record with information necessary to permit Aetna to make an appropriate evaluation of Schuman's [long-term disability] claim." *Id.* Accordingly, I remanded Schuman's case to the claims administrator.

After remand, a second transferrable skills analysis ("TSA") was required to evaluate Schuman's claim. Aetna's TSA review was assigned by Leanne Wolfinger, a vocational rehabilitation counselor at Aetna, to Joseph Thompson, Vocational Case Manager at Coventry, who was asked to prepare a labor market survey ("LMS"). Schuman was identified by Aetna as

---

A "reasonable occupation" is defined in all of the policies as:

> [a]ny gainful activity:
>
> For which you are or may reasonably become, fitted by education, training, or experience; and
> Which results in, or can be expected to result in, an income of more than 60% of your adjusted pre-disability earnings.

*See* AR at 119.

having sedentary work capacity for purposes of the TSA review, which meant that he has "full time sustained work capacity with restrictions and/or limitations to include standing and walking for 2 hours in an 8-hour day. No restriction on sitting. Exerting up to 10 pounds of force occasionally to push, pull, lift or carry objects." SAR at 1559. Thompson surveyed employers nationally regarding occupations listed in a prior LMS to obtain information regarding wages, requirements and physical demands. Thompson was instructed to verify that each position exists, obtained information regarding each position's wages and qualifications, indicated hiring trends, and verified if work at home options were available for the identified positions.

On April 17, 2017 and April 28, 2017, Coventry submitted Thompson's Supplemental LMS Report ("the Thompson Report") to Aetna. The Thompson Report surveyed potential occupations for Schuman by contacting twenty-four different employers to investigate whether positions existed in the national economy that met Schuman's requirements regarding qualifications, physical demands, and pay. Of the twenty-four employers surveyed, Thompson identified nineteen employers as having occupations that met all three aspects of qualifications, physical demands, and a reasonable wage. The Thompson Report concluded that "there are a variety of occupations identified nationally within the pharmaceutical and healthcare industry that are consistent with [Schuman's] qualifications, physical demands and reasonable wage information." *Id.* at 1634, 1655.

On May 22, 2017, Schuman sent Aetna a supplemental report from Erin Bailey of CRC Services, LLC ("the Bailey Report"), which at Schuman's request, (1) re-evaluated the jobs identified in Aetna's LMS from October 28, 2014 and an undated LMS Report completed by Sarah P.S. Coughlin, (2) compared those jobs to Schuman's qualifications as of October 2014, and (3) provided what additional training, education or experience Schuman would need to

7

become qualified for such positions. *See id*. at 1658–59. Schuman requested that Aetna consider the Bailey Report when reviewing Schuman's LTD claim on remand.

The Bailey Report concluded that Schuman could not perform the positions identified by the Thompson Report. The Bailey Report stated that Schuman does not meet the job qualifications in the Thompson Report due to his "limited pharmacist experience" in non-retail settings. *Id.* at 1662–63. In addition, the Bailey Report noted that there are "no courses or vocational activities outside of previous work experience that could prepare" Schuman for the identified positions, aside from obtaining a Pharm-D [Doctor of Pharmacy Degree], which would require approximately five to six years of schooling. *Id*. at 1663. The Bailey Report also concluded that Schuman could not work as a pharmacist in a hospital setting "due to the advanced trainings and education (Pharm-D) required in addition to the physical requirements of the position as they relate to the frequency and duration of standing and walking." *Id*.

In a letter dated August 4, 2017, Aetna informed Schuman that its decision to deny his LTD claim remained unchanged after the Thompson Report identified fourteen alternative occupations in the national economy "within the pharmaceutical and healthcare industry that are consistent with Mr. Schuman's qualifications, physical demands and reasonable wage." *Id*. at 1668–69. Aetna's letter also informed Schuman that he had not provided Aetna with additional information regarding his medical status. Thus, Aetna assumed that Schuman's medical condition had not changed since his prior medical reports.

On September 1, 2017, Schuman informed Aetna that he was appealing his August 4, 2017 denial of LTD benefits. In support of his appeal, Schuman submitted additional documents, including medical records documenting his office visits with Dr. Aronow, Schuman's treating physician. Dr. Aronow recommended that Schuman be limited to four-hour

8

sedentary work days, with some icing and elevation of his feet as needed every two hours. In addition, Dr. Aronow opined that Schuman "be limited to a strict sedentary position and that this would likely be a permanent restriction." *Id.* at 1687. Schuman also informed Aetna that he conducted his own research regarding the jobs identified in the Bailey Report and asserted that he was not qualified for any of those jobs.

On September 12, 2017, Schuman's claim file was returned to Aetna for a full appeal review. By letter dated October 16, 2017, Aetna informed Schuman that his appeal was pending the receipt of a vocational assessment and would need a 45-day extension to complete the appeal review. In a November 1, 2017 Addendum to his supplemental report, Thompson "provide[d] additional information related to the previous [LMS] and documentation of employers." *Id.* at 1752. On November 10, 2017, Aetna informed Schuman that it was upholding its original decision to terminate Schuman's LTD benefits. Aetna's denial letter stated that "a review of the available information in the file concluded that as of October 26, 2014, Mr. Schuman would have the physical ability to perform activities that are mainly seated, occasionally exerting up to 10 pounds and frequently reach, handle and finger." *Id*. at 1755. In addition, Aetna concluded "that Mr. Schuman had transferable skills to alternate reasonable occupations that can be performed based on his physical capacity as of October 27, 2014 and the decision to terminate benefits remained unchanged." *Id*. at 1756.

## III. Discussion

### A. Under the *De Novo* Standard of Review Neither Side Is Entitled to Judgment as a Matter of Law

Under a *de novo* standard of review, Schuman bears the burden of proving by a preponderance of the evidence that "he is totally disabled within the meaning of [his] plan." *See Paese v. Hartford Life & Acc. Ins. Co*., 449 F.3d 435, 441 (2d Cir. 2006). Based on the evidence

9

in the record, there is a dispute of material fact regarding whether Schuman is disabled under the "any reasonable occupation" test.

In his motion, Schuman argues that he is unable to perform pharmaceutical jobs in the national economy that meet his reasonable wage requirement. In support of his argument, he notes that he cannot return to Ahold as a retail pharmacist because of Ahold's inability to accommodate him in a wheelchair or allow him to continuously elevate his legs during the workday. *See* Schuman's Mot. at 44–45. In addition, Schuman states that he lacks the skills required to work as a non-retail analyst for Ahold, and that Ahold does not have any positions in Connecticut that can utilize his pharmaceutical experience. *Id.* at 45. "If Ahold is unable to find any reasonable job within Schuman's restrictions and limitations, then this undercuts defendants' arguments that there are other jobs in the workplace which Schuman can perform." *Id*. Schuman also argues that due to his "advanced age," "limited computer abilities," and "lack of knowledge in pharmacy related software programs," he is unable to find any reasonable occupation that pays his reasonable wage requirement. *See id.* at 4, 22.

In their motion, defendants primarily rely on the April 17, 2017 Thompson Report prepared by Coventry, which concluded that there are nineteen occupations within the pharmaceutical and healthcare industry that are consistent with Schuman's qualifications, physical demands, and reasonable wage requirement.[4] *See* Defendants' Motion for Summary Judgment ("Defs' Mot.") (Doc. No. 115-4) at 25–26; SAR at 1633. The Thompson Report incorporated Schuman's prior work history as a retail pharmacist, his education and training, his computer skills, and his target wage of $37.98 an hour. *See* SAR at 1615–16. The Thompson

---

[4] The occupations listed in the Thompson Report include among others "Formulary Manager" at the US Veterans Administration, "Quality Assurance Specialist" at Takeda Pharmaceuticals, "Clinical Research Pharmacist" at Celerion, and "Project Manager" at United Health Group. *See* SAR at 1617–25.

10

Report also considered Schuman's functional capacities and restrictions, which included "standing and walking for 2 hours in an 8 hour work day" and "exert[ing] up to 10 pounds of force occasionally to push, pull, lift or carry objects." *Id.* at 1616. Because the Thompson Report identified nineteen employers that "[had] occupations that met all 3 aspects of [Schuman's] qualifications, physical demands and reasonable wage" requirements, defendants argue that Schuman is capable of performing another reasonable occupation, thus precluding him from obtaining LTD benefits.[5] *See id.* at 1633.

In response, Schuman relies on the Bailey Report, which opines that Schuman would need to obtain a doctorate degree in pharmacy to become qualified for occupations that would pay him a reasonable wage, given his sedentary limitations. Schuman's Opp. (Doc. No. 119) at 3; SAR at 1662. "[I]n order for Mr. Schuman to be marketable in non-retail pharmacist positions, he would be required to obtain a Pharm-D from an accredited college or university . . . . In October 2014, Mr. Schuman was 55 years of age. At the completion of a full-time Pharm-D academic program, Mr. Schuman would be 61 years old." SAR at 1662. Thus, obtaining a Pharm-D would be unduly burdensome for Schuman, considering a program's lengthy completion time and high tuition costs.[6] *Id.* at 1660–62. "It is easy for Thompson and defendants to prepare a list of highly paid occupations [in the Thompson Report]; it is quite another matter for someone of Schuman's age and experience to actually be able to perform and qualify for those occupations without advanced training or education." Schuman's Opp. at 3.

---

[5] Defendants note that the Thompson Report was based on the medical opinions of Dr. Aronow, Schuman's treating physician, and Dr. Taubman, an independent reviewing physician, both of whom determined that Schuman had a full-time sedentary capacity as of October 27, 2014. *See* Defs' Mot. at 18.

[6] In reaching that conclusion, Bailey contacted the University of Connecticut School of Pharmacy ("UConn") and Massachusetts College of Pharmacy ("MCPHS"). The tuition for UConn's program was approximately $81,924 and would take at least five years to complete. *See* SAR at 1661. The tuition for MCPHS's five-year program was estimated at $158,000. *Id.* at 1662.

11

After reviewing the entire record, neither side is entitled to summary judgment. Schuman has not shown that no reasonable factfinder could rule in favor of Aetna. Although Ahold is unable to accommodate Schuman as a retail pharmacist, that alone does not preclude him from working as a retail pharmacist for another company that may be able to accommodate his sedentary restrictions. Moreover, Schuman's contention that he is unable to work because of his "advanced age" is not well supported by the record. Schuman provides no evidence to show that his age renders him physically or mentally incapable of working as a retail pharmacist or completing any new training required for another occupation. Even if Schuman is required to undertake additional courses to qualify for a new occupation, he has not stated why he is unable to complete supplemental training, other than conclusory assertions that additional schooling would be lengthy and expensive. Thus, Schuman's motion is **denied**.

Under *de novo* review, defendants' reliance on the Thompson Report is unavailing. There is a genuine dispute of material fact regarding whether Schuman is or can become qualified for the non-retail pharmacy occupations listed in the Thompson Report. Although only one of the identified occupations expresses a preference for a Doctor of Pharmacy degree, most require experience in non-retail pharmacy settings. Based on the evidence submitted by Aetna, I cannot say as a matter of law that Schuman is or may become qualified for the jobs listed in the Thompson Report.

Moreover, Aetna did not fully assess the possibility that Schuman could be accommodated as a retail pharmacist by another employer. Aetna represents that "there is the potential that Schuman could perform his own occupation" under an accommodation, but also concedes that "Aetna did not consider" that hypothetical when evaluating Schuman's

transferrable skills analysis. *See* Def's Supp. Mem. (Doc. No. 135) at 3. Therefore, the defendants' motion is also **denied**.

**IV.     Conclusion**

For the reasons stated above, I **deny** motions for summary judgment (doc. nos. 113 and 115). A trial will be scheduled for the earliest date.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of July 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
